**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION**

**UNITED STATES OF AMERICA**             **CRIMINAL NO. 3:24-cr-00268**

**VERSUS**                               **JUDGE DAVID C. JOSEPH**

**MONTRAYGO DRAKE**                      **MAGISTRATE JUDGE KAYLA D.
                                         MCCLUSKY**

<u>**MEMORANDUM RULING**</u>

Before the Court is a MOTION TO DISMISS INDICTMENT (the "Motion") filed by
Defendant, Montraygo Drake (hereinafter, "Defendant" or "Drake") on January 14,
2025.  [Doc. 17].  Drake moves to dismiss Counts One and Two of the Indictment
charging him with Possession of a Firearm and Ammunition by a Convicted Felon, in
violation of 18 U.S.C. § 922(g)(1).  [Doc. 1].  The government filed an Opposition on
January 29, 2025, and the Defendant filed a Reply on February 5, 2025.  [Docs. 23,
24].

<u>**BACKGROUND**</u>

On December 11, 2024, a federal grand jury returned an Indictment charging
the Defendant with two counts of 18 U.S.C. § 922(g)(1) for possession of a Ruger LCP
.380 Auto caliber pistol, a Jimenez Arms .380 Auto caliber pistol, and ammunition,
after being convicted of six separate state felony offenses.  [Doc. 1, pp. 1-2].  The
Defendant's prior felony convictions include: (i) possession of stolen things [Doc. 23-
1, p. 2], (ii) simple robbery [Doc. 23-2, p. 2], (iii) possession of Phencyclidine (Schedule
1) with intent to distribute [Doc. 23-3, p. 4], (iv) possession of a firearm by a felon, *Id.*,

(v) illegal possession of a stolen firearm, *Id.*, and (vi) possession of a Schedule II controlled dangerous substance [Doc. 23-4, p. 3].

## LAW AND DISCUSSION

The Defendant's Motion asserts that § 922(g)(1) violates the Second Amendment as applied to him in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1, 142 S. Ct. 2111, 213 L.Ed.2d 387 (2022), as clarified by *United States v. Rahimi*, 144 S. Ct. 1889, 219 L.Ed.2d 351 (2024). Drake also points the Court to the recent Fifth Circuit case of *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), which describes the proper framework under which district courts are to consider "as-applied" challenges to charges brought under 18 U.S.C. § 922(g)(1).

In opposition, the government contends that the nature of the Defendant's prior convictions defeats his as-applied challenge under applicable law. [Doc. 23, p. 1]. For the Defendant's simple robbery conviction, the government first points to the *Diaz* court's discussion of historical analogues that imposed estate forfeiture and the death penalty on individuals who committed felonies, such as theft. *Id.* at p. 6. The government then provides the Court with examples of such laws specifically punishing burglary and robbery. *Id.* at p. 7. Relevant to the Defendant's prior felony drug convictions, the government argues that it has long been recognized that the combination of drugs and guns leads to violence. *Id.* at p. 8. As such, the government draws an analogy to the "going armed" laws discussed in *Diaz* that were intended to prevent unnecessary violence. *Id.* at p. 10; *Diaz*, 116 F.4th at 470. Lastly, the

government asserts that the Defendant's prior conviction for illegal possession of a stolen firearm comports with our nation's history and tradition of firearm restrictions, pointing the Court to founding era laws punishing the trafficking of contraband. *Id.* at pp. 10-11.

## I.    *Legal Standard*

Federal Rule of Criminal Procedure 12(b)(1) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "Among other defenses, objections or requests available under Federal Rule of Criminal Procedure 12(b), a party may move to dismiss an indictment based on 'a defect in the indictment,' including 'failure to state an offense.'" *United States v. Wilson,* 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024), *citing* Fed. R. Crim. P. 12(b)(3)(B)(v). A court can resolve a motion to dismiss an indictment before trial when the motion presents a question of law. *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

## II.    *Governing Second Amendment Law*

In *Bruen*, the United States Supreme Court set forth a two-step framework for Second Amendment constitutional challenges. *Bruen*, 597 U.S. at 24. First, "*Bruen* requires the Court to decide 'if the Second Amendment's plain text covers' the conduct at issue." *Wilson*, 2024 WL 4436637, at *4, *citing Bruen*, 597 U.S. at 24. Second, "the burden … shifts to the government to demonstrate that regulating [the Defendant's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id., citing Bruen*, 597 U.S. at 24. "To satisfy this burden, the

government must 'identify a well-established and representative historical analogue, not a historical twin.'" *Diaz*, 116 F.4th at 467, *citing Bruen*, 597 U.S. at 30.   In determining if regulations are relevantly similar under the Second Amendment, the Court must consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29.

### III.    *Section 922(g)(1) is Constitutional as Applied to the Defendant*

Beginning with the first step of the *Bruen* analysis, the Fifth Circuit made clear in *Diaz* that the Second Amendment's plain text covers felons as among "the people" covered by the Second Amendment.[1] Therefore, the Court will only undertake the second step of the *Bruen* analysis.

In analyzing the second prong, the Court first must determine whether there are historical analogues that "impose a comparable burden on the right of armed self-defense" during the timeframe of the Second Amendment's ratification.  *See Bruen*, 597 U.S. at 27.   In upholding a § 922(g)(1) conviction predicated on a felony theft conviction, the *Diaz* Court relied on three categories of historical analogues: (i) historical laws that authorized capital punishment and estate forfeiture as consequences of theft convictions,[2] (ii) two proposals from state constitutional

---

[1]    "The government also raises the familiar argument that *Diaz* is not among 'the people' protected by the Second Amendment.  We disagree. … Diaz's status as a felon is relevant to our analysis, but it becomes so in *Bruen*'s second step of whether regulating firearm use in this way is 'consistent with the Nation's historical tradition' rather than in considering the Second Amendment's initial applicability." *Diaz*, 116 F.4th 458, 466–67 (5th Cir. 2024), *citing Bruen*, 597 U.S. at 24.

[2]    The Court notes that while the category of what was considered a felony at the time of our Nation's birth was "a good deal narrower" than today, the government finds further support in the historical analogues discussed in *Diaz* which specifically address the crime of

conventions that excluded those deemed dangerous from the right to bear arms,[3] and (iii) the colonial-era "going armed" laws first discussed in *Rahimi* that "prohibited going armed offensively and authorized forfeiture of weapons as punishment." *Id.* at 467, 468, 470.  Importantly, in all three categories of analogues discussed in *Diaz*, the consequences of committing certain crimes encompassed forfeiture of the right to bear arms.

Applying this precedent to the instant case, the historical analogues discussed in *Rahimi* and *Diaz* are all rooted in a common purpose: the disarming of individuals viewed to be violent or a threat to public safety.[4]  These analogs demonstrate a longstanding "tradition of firearm regulation" which allows the "Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 144 S. Ct. at 1902.

---

theft.  *Diaz*, 116 F.4th at 468.  The *Diaz* court cited colonial era statutes that punished theft by estate forfeiture and the death penalty.  *Id.*

[3]   "The Pennsylvania address suggested that citizens have a personal right to bear arms 'unless for crimes committed, or real danger of public injury.' … Massachusetts's proposed amendment said that the Constitution authorized 'the people of the United States, who are peaceable citizens, [to keep] their own arms.'" *Diaz*, 116 F.4th at 470, *citing* BERNARD SCHWARTZ, THE BILL OF RIGHTS: A DOCUMENTARY HISTORY 662, 665, 681 (1971).

[4]   The *Diaz* court explained that historical laws authorizing capital punishment and estate forfeiture as consequences of felonies were "justified by the need to adequately punish felons, deter reoffending, and *protect society from those proven untrustworthy to follow the law*." *Diaz*, 116 F.4th at 469 (emphasis added).  Similarly, the *Diaz* court found that the proposals from state constitutional conventions "reveal[ed] that the right to bear arms at the time was not unlimited, and that the government could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons." *Id.*  Lastly, the *Diaz* court discussed the Supreme Court's finding in *Rahimi* that "going armed" laws punished "those who had menaced others with firearms" because such actions "disrupted the 'public order' and 'le[d] almost necessarily to actual violence.'" *Id.* at 470, *citing Rahimi*, 144 S. Ct. at 1900-01.

Here, one of the predicate felonies cited by the government as supporting Drake's felon in possession charge is a simple robbery conviction under Louisiana law. La. R.S. § 14:65. The Louisiana felony of simple robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon." La. R.S. § 14:65. Thus, in Louisiana, a simple robbery conviction necessitates not only a showing of theft, but also the use of force or intimidation in accomplishing the theft. *State v. Florant*, 602 So.2d 338, 340 (La. App. 4th Cir. 1992). This clearly places the Defendant into the category of those who "present a credible threat to the physical safety of others." *Rahimi*, 144 S. Ct. at 1902. Like in *Diaz*, the purpose behind the enforcement of § 922(g)(1) against this Defendant is "relevantly similar to that of the [historical analogs]: to deter violence and lawlessness."[5] *Diaz*, 116 F.4th at 469.

Further — even absent Drake's use of force or intimidation — Drake's simple robbery conviction is factually analogous to *Diaz's* predicate crime of theft of a vehicle because the predicate crimes committed in both this case and *Diaz* involved the theft of a car, [Doc. 23-2, p. 1]; *Diaz*, 116 F.4th at 467.[6] As such, "the authorities that *Diaz*

---

[5]    "The precursor to § 922(g)(1) … was enacted to 'bar possession of a firearm from persons whose prior behaviors have established their violent tendencies.'" *Diaz*, 116 F.4th at 469, *citing* 114 CONG. REC. 14773 (daily ed. May 23, 1968) (statement of Sen. Russell Long of Louisiana).

[6]    Defendant's argument that "no facts concerning the crimes have been presented showing [the Defendant's] crime of simple robbery is analogous to any historical equivalent" is baseless. [Doc. 24, pp. 3-4]. Not only has the government provided the Court with evidence that Defendant's simple robbery conviction involved the theft of a car, which is analogous to

relied on to create historical analogs support the constitutionality of predicating disbarment on a Louisiana robbery conviction." *United States v. Matthews,* 2025 WL 105291, at *2 (E.D. La. Jan. 15, 2025).[7]

The same is true for several of the other historical analogs cited by the government in its opposition memorandum. [Doc. 23, p. 7]. During colonial times, the crimes of robbery and burglary were punishable by estate forfeiture,[8] and death.[9] And a closer examination of the reasons behind the passage of these laws reveal that they had the same purpose as those discussed in *Rahimi* and *Diaz:* protecting public safety.[10] The Court therefore finds that the Second Amendment does not preclude the enforcement of § 922(g)(1) against the Defendant in the instant Indictment.

---

the predicate crime in *Diaz,* but the elements of simple robbery alone are sufficient to support the application of the historical analogs discussed *infra.*

[7]    The Court notes that one of the historical analogs discussed in *Diaz* is particularly applicable to this matter. The *Diaz* court cited a colonial era law that specifically targeted horse theft, which that court referred to as "the closest colonial era analogue to vehicle theft." *Diaz,* 116 F.4th at 468.

[8]    2 Laws of the State of New York Passed at the Sessions of the Legislature (1785–1788) at 664–66 (1886).

[9]    *Id.*; Hugh F. Rankin, Criminal Trial Proceedings In The General Court Of Colonial Virginia, 129, 149, 159, 167, 204, 219–22 (1965); An Act for the Punishment of Burglary and Robbery, 1783 Conn. Laws 633; An Act Against Burglary, ch. 14, 1785 Mass. Laws 242.

[10]    Act of May 13, 1711, ch. 2, § 1, 1 Acts and Resolves of the Province of Massachusetts Bay 85–86 (1869) ("AN ACT FOR SUPPRESSING OF ROBBERIES AND ASSAULTS. To intent her majesty's liege people may be in peace, and out of fear of being assaulted and robbed by ill-minded wicked ruffians[.];" William Charles White. Compendium and Digest of the Laws of Massachusetts at 1137 (1810) ("Thus if a person, with a sword drawn, begs alms, and I give it to him through mistrust and apprehension of violence, this is a felonious robbery); Rankin, Criminal Trial Proceedings In The General Court Of Colonial Virginia, 129, 149, 159, 167, 204, 219–22 (focusing on fear as the distinguishing factor between robbery and other types of theft).

Lastly, for good measure, the Court notes that courts across the country have held § 922(g)(1) constitutional as applied to defendants with the same or similar predicate convictions as Drake. *See Matthews*, 2025 WL 105291 (finding that § 922(g)(1) was constitutional as applied to a defendant previously convicted of simple robbery); *United States v. Polk*, No. 23-00166, 2024 WL 4216039, at *5 (S.D. Ind. Sept. 17, 2024) (same for robbery and battery); *United States v. Leslie,* 2024 WL 1718062, at *2 (E.D. Pa. Apr. 22, 2024) (same for aggravated assault and robbery).

Because the Court finds that the Defendant's predicate felony conviction of simple robbery is sufficient to support the Indictment's 18 U.S.C. § 922(g)(1) counts under the *Bruen* analysis, the Court need not examine the remainder of the Defendant's criminal history to deny the Motion.

## CONCLUSION

Therefore, for the reasons stated herein,

IT IS HEREBY ORDERED that Defendant's Motion to dismiss Counts One and Two of the Indictment is DENIED.  [Doc. 17].

THUS, DONE AND SIGNED in Chambers on this 6th day of February 2025.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE